UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>ZAZIIZ S. L. DINKINS,<br><br>                  Plaintiff,<br><br>    -v-<br><br><br>ALEJANDRO MAYORKAS, SECRETARY OF<br>HOMELAND SECURITY,<br><br>                  Defendant.</td><td>CIVIL ACTION NO. 23 Civ. 10660 (RFT)<br><br>**OPINION AND ORDER**</td></tr>
</table>

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

In her Complaint, Plaintiff Zaziiz S. L. Dinkins, proceeding pro se, brings suit against

Defendant Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security. (*See*

*generally* ECF 11, Exhibit to Complaint ("Compl.").) Plaintiff alleges numerous causes of action,

including claims for employment discrimination, hostile work environment, and retaliation

based on color/race and/or disability and/or national origin and/or age pursuant to Title VII, the

Rehabilitation Act, and the Age Discrimination in Employment Act (ADEA).[1]

The parties have consented to my jurisdiction under 28 U.S.C. 636(c) and Fed. R. Civ. P.

73 to conduct all proceedings in this case. (*See* ECF 48.) Pending before me is a motion to

dismiss pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* ECF 53.)

For the reasons set forth below, the motion to dismiss is GRANTED, but Plaintiff may file an

amended complaint.

---

[1]     Plaintiff does not explicitly state which statutes underlie her claims. In an effort to read
the Complaint in the light most favorable to Plaintiff, I interpret the Complaint as trying to
allege claims under each of these statutes.

**FACTUAL BACKGROUND**

For purposes of the pending motion to dismiss, the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in her favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017). As relevant to the pending motion, Plaintiff's allegations are summarized below.[2]

Plaintiff worked as a program analyst for the Federal Emergency Management Agency ("FEMA") in the Region II Mission Support Division from February 4, 2018 to February 3, 2020. (*See* ECF 56, Marcia Edwards Declaration in Support of Motion to Dismiss ("Edwards Decl.") ¶ 2.) She was tasked with building the Business Management Branch ("BMB") within the Division. (*See* ECF 11, Compl. at 15.)[3] Throughout her employment, Plaintiff reported to Marcia Edwards ("Edwards"), a Supervisory IT Specialist, and Tasha Coleman ("Coleman"), the Mission Support Director. (*See* ECF 56, Edwards Decl. ¶ 4.) Plaintiff alleges that, starting on April 4, 2018, she was targeted by Coleman for mistreatment based on Plaintiff's color/race and/or disability and/or national origin and/or age. (*See* ECF 11, Compl. at 3.)

Beginning on or around April 4, 2018, Coleman refused to review Plaintiff's work, despite being responsible for that task. (*See* ECF 57-1, Pl.'s Letter in Opp. at 4; ECF 14, Zaziiz

---

[2]     A Court deciding on a motion to dismiss may consider factual allegations and documents made in a pro se litigant's opposition to a motion to dismiss. *See Sofia v. Esposito*, 17-cv-1829 (KPF), 2018 WL 1755484, at *2 (S.D.N.Y. Apr. 10, 2018) ("[A]a court may also consider factual allegations made in a *pro se* litigant's submissions opposing a motion to dismiss."). I am considering such factual allegations and documents here.

[3]     Page 15 of the Complaint is the Department of Homeland Security's ("DHS") description of the claims at issue. The Court accepts the dates and descriptions as incorporated into the Complaint because in Plaintiff's statement in support of appeal to the Department's Final Agency Decision (FAD), she notes that "[t]he claims against Tasha Coleman were listed just the way they occurred." (*See* ECF 11, Compl. at 17.)

Dinkins Affidavit in Support of Letter Request for Default Judgment ("Dinkins Aff."), at 3-4.) In April 2018, Coleman denied Plaintiff the opportunity to attend a work trip to Puerto Rico, and instead chose two of Plaintiff's co-workers, Tiffany Lowe and Maurice McRae, to attend. (*See* ECF 11, Compl. at 15; ECF 57-1, Pl.'s Letter in Opp. at 5.) Coleman also made hurtful, disparaging, and insulting remarks towards Plaintiff. (*See* ECF 11, Compl. at 3.) Coleman's communication style was "harsh, dismissive and demeaning." (*See* ECF 57-1, Pl.'s Letter in Opp. at 2.) For example, on or around January 15, 2019, Coleman told Plaintiff, "I don't understand why you are here, every time I turn around I see you." (*See id.* at 5.)  On or around March 20, 2019, Coleman sarcastically stated "thank you for saving me" after Plaintiff had completed a work assignment. (*See id.* at 7.) And on or around May 20, 2019, after Plaintiff told Coleman that Plaintiff has a doctorate in Business Administration, Coleman remarked, "Good, I'll make sure you get what you deserve." (*See id.* at 7.)  In two consecutive meetings, Coleman publicly displayed the incorrect spelling of Plaintiff's first and last name. (*See* ECF 11, Compl. at 15; ECF 57-1, Pl.'s Letter in Opp. at 8-9.)

Additionally, Coleman ignored Plaintiff, isolated her from her co-workers, and excluded her from meetings. (*See* ECF 11, Compl. at 3; ECF 57-1, Pl.'s Letter in Opp. at 11-14.) On or around September 20, 2019, at some time between 7:00am and 8:30am, Coleman told all members of the Mission Support Division, except for Plaintiff, to move to a different office location. (*See* ECF 11, Compl. at 11.) At around 10:30am that same day, Plaintiff's direct supervisor, Edwards, found Plaintiff alone and had to explain that the rest of the team had moved. (*See id.*) Plaintiff felt "humiliated." (*See id*. at 17.)

On or around June 24, 2019, Coleman informed Plaintiff that the BMB project was discontinued and failed to assign Plaintiff work in place of that assignment. (*See id.* at 15, 17.) Coleman did not provide Plaintiff with alternative work, so to keep herself busy, Plaintiff completed computer trainings throughout the day. (*See id.* at 17, 19.) On or around September 17, 2019, Coleman informed Plaintiff that Coleman was not extending Plaintiff's "not to exceed" date within her contract with FEMA. (*See id*. at 15.) On or about November 4, 2019, Plaintiff was notified that she would not be receiving an interview for an open, permanent position at FEMA. (*See id*.) After Plaintiff filed an EEO complaint on January 21, 2020 (*see* ECF 55, Daniel Piccaluga Declaration ("Piccaluga Decl.") Ex. B, Final Agency Decision, at 2), Coleman "kept finding ways to exclude [Plaintiff]." (*See* ECF 11, Compl. at 19.)

Coleman's conduct impacted Plaintiff's mental health, her morale, and her job performance. (*See id.* at 3.)

## **PROCEDURAL HISTORY**

On October 9, 2019, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor. (*See* ECF 55, Piccaluga Decl. Final Agency Decision, at 1.) Following informal counseling, Plaintiff filed a formal complaint with DHS on January 21, 2020, alleging that FEMA, and specifically Coleman, had discriminated against her and created a hostile work environment based on her race, national origin, sex, age, and disability. (*See id.* at 2.) On July 13, 2021, DHS concluded that Plaintiff had failed to prove that FEMA had discriminated against her. (*See id.* at 12.) Plaintiff timely appealed the agency's decision to the Equal Employment Opportunity's Commission ("EEOC"). (*See* ECF 55, Piccaluga Decl. Ex. C. at 1.)

4

On March 1, 2022, while her appeal was still pending with the EEOC, Plaintiff filed a complaint in the District of New Jersey alleging claims arising out of her employment. (*See* ECF 1.) The EEOC dismissed Plaintiff's appeal based on the initiation of this action. (*See* Piccaluga Decl. ECF 55, Ex. C, at 3 (citing 29 C.F.R. § 1614.409).) On August 19, 2022, Plaintiff filed an exhibit to her initial complaint, which included statements from various witnesses, including herself. (*See* ECF 11, Compl.) Defendants considered that a re-filing of Plaintiff's initial complaint (*See* ECF 54, Def.'s Mem. in Support of Mot. to Dismiss at 3) and the Court also will consider it as such.

On October 16, 2023, Defendant filed a motion to dismiss for failure to state a claim and, in the alternative, to dismiss or transfer the action pursuant to 12(b)(3). (*See* ECF 37, Def. Mot.) On October 24, 2023, Plaintiff filed a response to Defendant's motion. (*See* ECF 38, Pl. Opp.) On November 6, 2023, Defendant filed its reply. (*See* ECF 39, Def. Reply.)

On November 27, 2023, Judge Hillman denied Defendant's motion to dismiss without prejudice and granted its motion to transfer the case to this District. (*See* ECF 41, Order). On December 11, 2023, the Court issued an order of reference to Magistrate Judge Sarah Netburn for general pretrial supervision. (*See* ECF 44, Order.) The reference was reassigned to me on December 13, 2023. On December 26, 2024, the Court set a briefing schedule for the motion to the dismiss. (*See* ECF 50, Order.) Defendants' fully briefed motion to dismiss the complaint was submitted on January 29, 2024. (*See* ECF 53, Def.'s Mot. to Dismiss; ECF 54, Def.'s Mem. in Support of Mot. to Dismiss; ECF 55, Piccaluga Decl.; ECF 56, Edwards Decl.; ECF 57-1, Pl.'s Letter in Opp.; ECF 58, Def.'s Reply.)

**LEGAL FRAMEWORK ON A MOTION TO DISMISS**

Judgment on a Rule 12(b) motion for failure to state a claim upon which relief can be granted is appropriate when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

The Complaint, filed pro se, "must be construed liberally 'to raise the strongest arguments [it] suggest[s].'" *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.2006)).

**DISCUSSION**

Defendant seeks dismissal of the Complaint pursuant to Rule 12(b)(6) on the ground that Plaintiff fails adequately to plead any claims. For the following reasons, I agree.[4]

---

[4]     Defendant also asks the Court to dismiss the complaint pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure on the ground that the Complaint fails to provide fair notice. (*See* ECF 54, Def.'s Mem. in Support of Mot. to Dismiss at 5-7.) Rule 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim

I.      **Plaintiff Fails Adequately To Plead Claims Of Discrimination**

      A.      <u>Legal Standard for Claims of Discrimination</u>

A plaintiff alleging employment discrimination "need not plead a *prima facie* case." *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *4 (S.D.N.Y. Apr. 30, 2013). A plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (holding that the district court erred when it granted 12(c) dismissal because the plaintiff had not established prima facie case of discrimination). However, the elements of the prima facie case "provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted).

The four elements to a prima facie case for employment discrimination are: (i) that Plaintiff is a member of a protected class; (ii) that Plaintiff was qualified for her position; (iii) that Plaintiff suffered an adverse employment action; and (iv) that Defendant acted with discriminatory intent. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). I address below the legal standards for the two elements primarily at issue on this motion.

---

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of the Rule is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation marks omitted)). Dismissal pursuant to Rule 8(a)(2) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). While the Complaint does suffer from some vagueness and ambiguity, I do not believe it is so "unintelligible that its true substance . . . is well disguised." *Id.*

1.   Adverse Employment Action

To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and emphasis omitted). The change in working conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Henry v. NYC Health & Hosp. Corp.*, 181 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha*, 548 F.3d at 78) (internal quotation marks omitted).

A change in job duties does not automatically qualify as an adverse employment action. *See Morrison v. Potter*, 363 F. Supp. 2d 586, 590 (S.D.N.Y. 2005) (on summary judgment). The United States Supreme Court recently held that in order to qualify as an adverse employment action, a change in responsibilities must leave a plaintiff "worse off, but need not leave her significantly so.'" *See Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, No. 22-193, 2024 WL 1642826, at *7 (Apr. 17, 2024) (noting that at the summary judgment stage it does not matter that a plaintiff's "rank and pay remained the same, or that she still could advance to other jobs" if "some injury" brought by the change in responsibilities is shown).

2.   Discriminatory Intent

"The law in this Circuit is clear that the '*sine qua non*' of a Title VII discrimination claim is that 'the discrimination must be *because of* [a protected characteristic].'" *Henry*, 18 F. Supp. 3d at 407 (S.D.N.Y. 2014) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)) (emphasis in original). Discriminatory intent can be supported "either by pleading direct evidence of discrimination, including 'comments indicating prejudice on account of a protected characteristic,' or by pleading facts showing that comparators outside the Plaintiff's group were treated better than Plaintiff." *Mitura v. Finco Servs., Inc.*, No. 23-CV-2879 (VEC), 2024 U.S. Dist. LEXIS 11000 (S.D.N.Y. Jan. 22, 2024) (quoting *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022)). If a plaintiff tries to show that comparators were treated better, "the plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" *Henry*, 18 F. Supp. 3d at 408 (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). This "does not mean all respects generally, but rather sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Hernandez v. City of New York*, No. 11-CV-3521 (SJ) (RER), 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)) (internal quotation marks omitted).

Allegations of "adverse actions taken against employees who are not similarly situated" do not "establish an inference of discrimination." *Littlejohn*, 795 F.3d at 312. "[I]t is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019). The "plaintiff must still identify at least one

comparator to support a minimal inference of discrimination" to survive a motion to dismiss.

*Goodine v. Suffolk Cnty. Water Auth.*, No. 14-CV-4514 (JS) (ARL), 2017 WL 1232504, at *4

(E.D.N.Y. Mar. 31, 2017).

     B.    <u>Analysis of Plaintiff's Claims for Discrimination</u>

Plaintiff identifies her race and national origin; she states that she is disabled; and she

states her age. (*See* ECF 57-1, Pl.'s Letter in Opp. at 2) ("I was an over-60-year-old-black-service-

connected-disabled Belizean American-female-veteran.") But to adequately plead the first

element of a discrimination claim, she would need to say to which protected class or classes to

which she belongs is the basis for the alleged discrimination. Put another way, she must say

whether she believes she was discriminated against based on her race, or her disability status,

or her age, or some combination of these factors.

The second element of a discrimination claim, that Plaintiff was qualified for her

position, is not in dispute. (*See generally* ECF 54, Def.'s Mem. in Support of Mot. to Dismiss at 7-

14.)

Primarily at issue is whether Plaintiff has sufficiently pleaded the last two elements of a

discrimination claim: that she suffered an adverse employment action and that Defendant

acted with discriminatory intent.

     1.   Adverse Employment Actions

Plaintiff does not precisely identify which events she believes constituted adverse

employment actions, but the Complaint may reasonably be read as alleging that the following

acts by Coleman were adverse employment actions: isolating Plaintiff from her co-workers by

neglecting to tell Plaintiff that their group was moving to a different area of the office, which

was addressed a few hours later when Plaintiff's line supervisor told her she too should move her things to the new work area; excluding Plaintiff from meetings; reassigning Plaintiff's work to Coleman's secretary, (*see* ECF 11, Compl. at 3, 11); and choosing two of Plaintiff's co-workers but not Plaintiff to attend a trip to Puerto Rico. (*See* ECF 57-1, Pl.'s Letter in Opp. at 5.). I believe that only the reassignment of Plaintiff's work and the resulting lack of work for Plaintiff can be considered an adverse employment action.

Telling all employees in their group except Plaintiff to move to a new work area, while thoughtless at best and petty and cruel at worst, had an impact on Plaintiff for three-and-a-half-hours at most. As such, this event was an inconvenience but does not constitute an adverse employment action, which "must be more disruptive than a mere inconvenience . . . ." *Mathirampuzha*, 548 F.3d at 78 (quoting *Sanders*, 361 F.3d at 755).

Being excluded from meetings does not qualify as an adverse employment action, because Plaintiff does not allege that her exclusion "created a materially significant disadvantage in her working conditions[,]" or that her job responsibilities were significantly diminished as a result. *Williams*, 368 F.3d at 128; *see also Richard v. N.Y. City Dep't of Educ.*, No. 16-CV-957 (MKB), 2017 WL 1232498, at *11 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff does not allege how his employment was materially altered as a result of his exclusion from the staff meetings and therefore has not alleged an adverse action based on the exclusion."). While "it may be unpleasant . . . to be excluded from a meeting[,]" such exclusion does not constitute an adverse employment action. *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-CV-8716 (PAE), 2024 WL 1117180, at *7 (S.D.N.Y. Mar. 13, 2024) (holding that exclusion from important meetings, absent a showing of a tangible effect on employment, does not constitute an adverse employment

11

action); *see also Littlejohn*, 795 F.3d at 312 n.10 (noting that the failure to include the plaintiff in meetings did not "significantly diminish [his] responsibilities") (internal quotation marks omitted).

And the decision to send two of Plaintiff's coworkers but not Plaintiff on a work trip to Puerto Rico does not constitute an adverse employment action, because Plaintiff does not allege that her inability to attend the trip reflected a "materially adverse *change* in the terms and conditions of employment*." Mathirampuzha,* 548 F.3d at 78 (internal quotation marks omitted) (emphasis in original). Plaintiff does not allege that attending work trips was a typical occurrence for her, and so she has not pleaded that not attending reflected a change. Additionally, a claim of favoritism in the context of a work trip does not "represent the kind of 'material loss in benefits' or 'significantly diminished material responsibilities'" that accompanies an adverse work event. *Sanderson v. Leg Apparel LLC*, No. 19-CV-8423 (GHW), 2023 WL 2753200, at *12 (S.D.N.Y. Mar. 31, 2023) (reconsidered on alternative grounds). Instead, such claims of favoritism reflect "[e]veryday workplace grievances, disappointments and setbacks" that "do not constitute adverse employment actions" under these statutes. *La Grande v. DeCrescente Distributing Co., Inc.*, 370 F. App'x 206, 211 (2d Cir. 2010).

However, Plaintiff's allegation that Coleman reassigned Plaintiff's work to Coleman's secretary and did not provide Plaintiff with alternative work, leaving Plaintiff with nothing to do (*see* ECF 11, Compl. at 3, 15, 17) does constitute an adverse employment action. *See Hollington v. CDM Fed. Programs Corp.*, No. 22-CV-4940 (ER), 2023 WL 2457057, at *8 (S.D.N.Y. Mar. 10, 2023) (finding that the failure to assign work when there was work available constituted an adverse employment action).

2.  Discriminatory Intent

While I believe that Plaintiff adequately alleges that she suffered an adverse work event when all her work was diverted to Coleman's secretary, she does not adequately allege that the cause of the adverse work event was discriminatory animus. Plaintiff does not allege that Coleman discriminated against her *because of* Plaintiff's membership in a protected class or classes. The Complaint contains no direct evidence that Coleman felt animus toward her because of her race/color, or her disability status, or her national origin, or her age; there are, for example, no allegations that Coleman (or anyone else) made negative comments about Plaintiff's race/color, disability status, national origin, or age.

Nor does the Complaint contain circumstantial evidence that Coleman deprived Plaintiff of work because of Plaintiff's membership in a protected category or categories, such as allegations that Plaintiff's favored coworkers were not members of Plaintiff's protected class or classes. A "plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" *Henry*, 18 F. Supp. 3d at 408 (quoting *Norville*, 196 F.3d 89 at 95). Thus, Plaintiff might support a claim of race discrimination by stating her race/color and identifying another project analyst of a different race/color who had been assigned to the BMB project and who received new assignments after the BMB project was disbanded. Plaintiff might support a claim of national origin discrimination by stating her national origin and identifying another project analyst of a different national origin who had been assigned to the BMB project and received new assignments after the BMB project was disbanded. Plaintiff

might support a claim of disability discrimination by describing the nature of her disability and identifying a non-disabled project analyst who had been assigned to the BMB project and who received new assignments after the BMB project was disbanded. And Plaintiff might support a claim of age discrimination by stating her age and identifying a younger project analyst who had been assigned to the BMB project and who received new assignments after the BMB project was disbanded. Plaintiff would need to identify "at least one comparator to support a minimal inference of discrimination" to survive a motion to dismiss. *Goodine*, No. 14-CV-4514 (JS) (ARL), 2017 WL 1232504, at *4.

* * *

For the foregoing reasons, I conclude that Plaintiff has adequately pleaded that the diminishment of her work responsibilities was an adverse work event but that her claims for employment discrimination should be dismissed because she fails adequately to allege either that she is a member of a protected class or classes or that Coleman's decision to deprive her of work was caused by discriminatory animus towards Plaintiff because of her membership in a protected class or classes.

II.    **Plaintiff Fails Adequately To Plead a Claim for Hostile Work Environment**

A.    Legal Standard for Claims of Hostile Work Environment

The Second Circuit has explained that, to state a claim for a hostile work environment, a plaintiff must plead facts tending to show that the conduct in question: "(1) 'is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected

14

class].'" *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y.

2013) (quoting *Patane*, 508 F.3d at 113). "[A] work environment's hostility should be assessed

based on the 'totality of the circumstances.'" *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift*

*Sys., Inc.*, 510 U.S. 17, 23 (1993)). Factors that may be considered include: "(1) the frequency of

the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a

mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work

performance." *Patane*, 508 F.3d at 113 (internal quotation marks and citation omitted). The

Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a

motion to dismiss such a claim. *Id.*

      B.    <u>Analysis of Plaintiff's Claims for Hostile Work Environment</u>

      Plaintiff fails adequately to plead a hostile work environment claim because the

Complaint does not detail facts showing that the alleged misconduct was objectively severe or

pervasive and because she does not allege facts supporting a conclusion that the mistreatment

was *because of* Plaintiff's membership in a protected class or classes.

      Plaintiff claims that between April 4, 2018 and December 18, 2019, Coleman made

unkind comments, excluded Plaintiff from meetings, and isolated Plaintiff from her coworkers,

creating an environment "that was so offensive, severe, and pervasive it altered the condition

of [Plaintiff's] employment." (ECF 11, Compl. at 3.) However, as alleged, the behaviors in

question, either individually or taken together, are not so "objectively severe or pervasive –

that [they], . . . create[ ] an environment that a reasonable person would find hostile or

abusive." *Trachtenberg*, 937 F. Supp. 2d at 472 (internal quotation marks and alterations

omitted).

Plaintiff does not allege that Coleman's comments to Plaintiff were frequent (*see* ECF 57-1, Pl.'s Letter in Opp. at 5) and therefore are not sufficiently severe to support her hostile work environment claim. *See Stanley v. Phelon*, No. 23-CV-731, 2024 U.S. App. LEXIS 8055, at *13 (2d Cir. Apr. 4, 2024) ("[T]he allegation regarding Defendants' verbal harassment is somewhat vague as to frequency and therefore does not rise to the level of sufficiently severe."). Plaintiff similarly fails to allege the number of meetings from which she was excluded, or the frequency with which she was excluded, and it is unclear why she believes she should have been invited to what she describes as "one-on-one meetings." (*See* ECF 57-1, Pl.'s Letter in Opp. at 14.) The allegations about being excluded from meetings therefore do not support a conclusion that the mistreatment of Plaintiff was so pervasive as to support her hostile work environment claim. And Plaintiff's isolation from her colleagues due to the failure immediately to inform her that her team had moved to a new location was too short-lived to support her hostile work environment claim.

To adequately plead a hostile work environment claim, Plaintiff would need to allege sufficiently severe mistreatment – facts that demonstrate a pattern of harassment and disparate treatment "pervasive enough that reasonable people would consider their working conditions to be altered as a result." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512 (CM), 2022 WL 524551, at *8 (S.D.N.Y. Feb. 22, 2022). For example, in *Mondelo*, the plaintiff sufficiently pleaded a hostile work environment claim because he alleged that his supervisor "made it difficult or impossible for Plaintiff to do his job effectively in a variety of ways[,]" including "excluding [the plaintiff] from meetings, degrading him, denying him

resources, and imposing deadlines that were impossible for [him] to meet," over a period of years. *Id.* at *8, *13.

Plaintiff's hostile work environment claim fails for the independent reason that Plaintiff never alleges that Coleman's conduct occurred *because of* Plaintiff's protected class membership. Conclusory allegations are insufficient, *see Iqbal*, 556 U.S. at 678, and the allegations in the Complaint about the reasons for Plaintiff's mistreatment are entirely conclusory. Plaintiff alleges that "Tasha Coleman treated me different [sic] from all the other workers simply because of my disability, my age, and the fact that I am more educated than she is" (*see* ECF 11, Compl. at 17), but Plaintiff fails to provide a basis for her conclusion that the mistreatment was because of her membership in a protected class or classes; these allegations therefore are insufficient to support her hostile work environment claim. While "[b]ullying and harassment have no place in the workplace, . . . unless they are motivated by the victim's membership in a protected class, they do not provide the basis for an action under" federal anti-discrimination laws. *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 574 (S.D.N.Y. 2014).

To adequately plead a hostile work environment claim, Plaintiff would need to explain the basis for her conclusion that Coleman's conduct arose out of animus to Plaintiff because of her membership in a protected class or classes. She could do so by pointing to similarly treated colleagues who were treated better than she was. *See, e.g.*, *Mondelo*, 2022 WL 524551, at *7 (permitting a hostile work environment claim to proceed when the plaintiff had provided specific examples of his supervisor "treat[ing] [his] non-Hispanic counterparts differently (and better) than he treated [the plaintiff]," such as by excluding only the plaintiff and not any non-Hispanic IT directors from weekly department meetings).

* * *

Plaintiff's hostile work environment claim should be dismissed because she fails to allege that Coleman's conduct created an environment that a reasonable person would find hostile. Additionally, Plaintiff fails to allege that she was mistreated because of her membership in a protected class or classes and not for some other reason or no reason at all.

**III.    Plaintiff Fails Adequately To Plead Retaliation**

A.    Legal Standard for Claims of Retaliation

Besides outlawing discrimination in the workplace, Title VII makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Federal anti-discrimination law therefore "prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct" prohibited by the anti-discrimination laws or "the employee otherwise engaged in protected activity." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (Title VII).[5]

---

[5]    The standard is the same under each of the potentially relevant anti-discrimination statutes. "In order to make out a prima facie case of retaliation under Title VII, the ADEA, or the Rehabilitation Act, a plaintiff must show that (1) he participated in a protected activity; (2) the employer knew of the protected activity; (3) he suffered a materially adverse employment action; and (4) there was a  causal connection between the protected activity and the adverse employment action." *Mazzeo v. Mnuchin*, 751 Fed. App'x 13, 15-16 (2d Cir. 2018) (citations omitted).

Pleading a prima facie case of retaliation requires alleging facts showing that: (1) the plaintiff participated in an activity protected by anti-discrimination laws, (2) the employer knew of that participation, (3) the employer subjected the plaintiff to a materially adverse employment action after the protected activity, and (4) there was "a causal connection between the protected activity and the adverse employment action." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). A retaliation claim survives a motion to dismiss when "the plaintiff . . . plausibly allege[s] that: (1) defendants discriminated – or took an adverse employment action – against [her], (2) 'because' [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e–3(a)).

1. Protected Activity

"'In order for an employee's complaints to be a 'protected activity' they must relate to an alleged violation of [antidiscrimination law], *i.e.*, the complaints must relate to race or gender.'" *Wong v. Blind Brook-Rye Union Free Sch. Dist.*, No. 20-CV-2718 (CS), 2022 WL 17586324, at *10 (S.D.N.Y. Dec. 12, 2022) (quoting *Taylor v. Fam. Residences & Essential Enters., Inc.*, No. 03-CV-6122 (DRH), 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008)). "'Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity.'" *Wong*, 2022 WL 17586324, at *10 (quoting *Batiste v. City Univ. of N.Y.*, No. 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017)).

2.   Adverse Employment Action

A materially adverse employment action is one that "could well dissuade a reasonable

worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "This definition covers a

broader range of conduct than does the adverse-action standard for claims of discrimination

under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision,

is not limited to discriminatory actions that affect the terms and conditions of employment.'"

*Id.* (quoting *Burlington*, 548 U.S. at 64).[6]

3.   Causation

A plaintiff may plead that an adverse work event was caused by the protected activity

either "'(1) indirectly, by showing that the protected activity was followed closely by

discriminatory treatment, or through other circumstantial evidence such as disparate treatment

of fellow employees who engaged in similar conduct; or (2) directly, through evidence of

retaliatory animus directed against the plaintiff by the defendant.'" *Galimore v. City Univ. of*

*N.Y. Bronx Comm. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (quoting *Gordon v. N.Y.C. Bd.*

*of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

"While the Second Circuit has articulated no 'bright line' rule for when an alleged

retaliatory action occurs too far in time from the exercise of a federal right to be considered

causally connected, it is well settled that when 'mere temporal proximity' is offered to

---

[6]      While claims brought under Title VII's *discrimination* prong no longer require showing a
"significant" change in employment status, the United States Supreme Court reaffirmed that for
a *retaliation* claim, a plaintiff must still show that a retaliatory action qualifies as "'materially
adverse,' meaning that the action causes 'significant' harm." *Muldrow*, 2024 WL 1642826 at *6.

demonstrate causation, the protected activity and the adverse action must occur 'very close' together." *Galimore*, 641 F. Supp. 2d at 288 (internal citations omitted); *see also Sareen v. Port Auth. of N.Y. & N.J.*, No. 12-CV-2823 (PAE), 2013 WL 6588435, at *14 (S.D.N.Y. Dec. 16, 2013) (collecting cases).

      B.    <u>Analysis of Plaintiff's Claims of Retaliation</u>

Plaintiff's retaliation claim fails because although the activity at issue, filing her EEOC complaint, is a protected activity, Plaintiff has not sufficiently alleged that any adverse employment action was taken because of her protected activity. In other words, the Complaint fails sufficiently to allege that *but for* her EEOC complaint, Coleman would not have taken the adverse employment action.

      1.   Protected Activity

Plaintiff's filing of her EEOC complaint – of which Coleman was allegedly aware – constituted protected activity. (*See* ECF 57-1, Pl.'s Letter in Opp. at 2-3.) "[F]iling of an EEOC complaint clearly constitutes a protected activity." *Conway v. Healthfirst Inc.*, No. 21-CV-6512 (RA), 2022 WL 4813498, at *5 (S.D.N.Y. Sept. 30, 2022) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719-20 (2d Cir. 2002)).[7]

---

[7]    Although Plaintiff also spoke to an EEO counselor in October 2019, she does not allege that Coleman knew about the consultation or that she was retaliated against because of this consultation. (*See* ECF 55, Piccaluga Decl. Ex. B, at 1.) Therefore, I focus on whether Plaintiff has adequately alleged that Coleman retaliated against her because of the January 21, 2020 filing. *See Natofsky v. City of N.Y.*, 921 F.3d 337, 353 (2d Cir. 2019) (In order to establish a retaliation claim, plaintiff must demonstrate that "the alleged retaliator knew that plaintiff was involved in protected activity").

2.   Adverse Employment Action

Plaintiff alleged that after Plaintiff filed an EEOC complaint, Coleman reassigned all of Plaintiff's remaining work (*see* ECF 11, Compl. at 19) and that Coleman "kept finding ways to exclude [Plaintiff]." (*See id*.) The reassignment of Plaintiff's work constitutes an adverse employment action for purposes of the retaliation claim. *See supra* Part I.B.1; *see also Vega*, 801 F.3d at 90 (explaining that an adverse employment action for purposes of a retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII"). However, Plaintiff's allegation that Coleman "kept finding ways to exclude [her]" is too vague to adequately plead an adverse employment action. For the exclusionary behavior to qualify as an adverse employment action, Plaintiff would need to allege more details about what specifically Coleman did that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90.

3.   Causation

Although the reassignment of Plaintiff's work constitutes an adverse employment action, the retaliation claim fails because Plaintiff does not sufficiently allege that her filing of the EEOC complaint caused Coleman to take away Plaintiff's work.

Plaintiff does not plead causation directly because she does not claim that Coleman "threatened [her] or made comments indicating that [Coleman] had retaliatory motive." *Killoran v. Westhampton Beach UFSD*, No. 19-CV-3298 (JS) (SIL), 2020 WL 4740498, at *10 (E.D.N.Y. June 24, 2020); *see also Riisna v. Am. Broad. Co., Inc.*, 219 F. Supp. 2d 568, 573 (S.D.N.Y. 2002) (finding on a motion for summary judgment that an email stating that the plaintiff could not work on a project because she had filed an EEOC complaint was sufficient

direct evidence of retaliatory motive); *Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) (finding the plaintiff police officer had alleged direct evidence of retaliation when his termination letter "expressly stated that he was being removed for having branded the entire department as racist and anti-semites").

Plaintiff also does not sufficiently plead causation indirectly because she does not allege "that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . ." *Galimore*, 641 F. Supp. 2d at 288.  As alleged in the Complaint, Plaintiff's work assignments slowed down after the BMB project was dissolved on June 24, 2019 (*see* ECF 11, Compl. at 15 ¶ 7), and on or around December 18, 2019, Coleman instructed Edwards to reassign Plaintiff's work to Coleman's secretary (*see id.* ¶ 17.)  The problem for Plaintiff is that both the decrease in her work starting in June and the diversion of all of her work starting in December both occurred *before* Plaintiff filed her EEOC complaint (that is, before the protected activity took place).[8] To plead causation indirectly, Plaintiff would need to allege that Coleman's actions occurred "very close" in time *after* Plaintiff filed her EEOC complaint. *Galimore*, 641 F. Supp. 2d at 288; *see also Vega*, 801 F.3d at 91-92 (holding that the plaintiff had properly pleaded a retaliation claim indirectly by alleging that, shortly after he filed

---

[8]    In Plaintiff's statement in support of appeal to DHS's FAD, Plaintiff asserts that "[n]ever once did [Coleman] do this [reassign Plaintiffs' work] before but because of the EEO complaint and the fact that she wanted to get back at me, she did it on purpose." (ECF 11, Compl. at 16.) However, the Complaint states that Coleman began reassigning Plaintiff's work in December 2019, which was *before* Plaintiff filed the EEO charge. (*See id*. at 15 ¶ 17.) To state a claim for retaliation, the protected activity "must predate evidence of the alleged retaliatory animus." *Petyan v. N.Y.C. Law Dep't*, No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961, at *13 (S.D.N.Y. Apr. 23, 2015) (citation omitted) ("Logically . . . conduct that began or took place entirely before [plaintiff] lodged his internal complaint cannot be considered the result of retaliation for that complaint, and cannot now form the basis of [plaintiff's] retaliation claims.").

a charge of discrimination with the EEOC, "he was assigned more students with excessive

absenteeism records (jumping from 20% to 75%), his salary was temporarily reduced, he was

not notified that the curriculum for one of his classes was changed, and he received a negative

performance evaluation").

\* \* \*

I conclude that Plaintiff's claim for retaliation should be dismissed because she fails to

allege that Coleman's conduct was caused by Plaintiff's filing of the EEO complaint.

## IV.    Leave To Amend

Plaintiff does not request leave to amend, and the Court is not obligated to grant leave

to amend sua sponte. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F.

App'x 472, 474 (2d Cir. 2009) (holding, where the plaintiff did not seek leave to amend in

opposition to the motion to dismiss, that the district court did not abuse its discretion by failing

to grant him such leave sua sponte). Moreover, a "plaintiff need not be given leave to amend"

where, as here, she "fails to specify . . . how amendment would cure the pleading deficiencies

in its complaint." *Moniodes v. Autonomy Cap. (Jersey) LP*, No. 20-CV-05648 (GHW), 2021 WL

3605385, at *8 (S.D.N.Y. Aug. 11, 2021).

However, "[i]n this circuit, '[i]t is the usual practice upon granting a motion to dismiss to

allow leave to replead[,]'" *Leneau v. Ponte*, No. 16-CV-00776 (GHW), 2018 WL 566456, at *18

(S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.

1991)), "and a *pro se* litigant in particular should be afforded every reasonable opportunity to

demonstrate that [s]he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)

(quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks omitted)). Of

course, "leave to amend a complaint may be denied when amendment would be futile." *Id.*
(quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) (internal quotation marks
omitted); *see also Moniodes*, 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021).

I believe that granting Plaintiff leave to amend the Complaint would not necessarily be
futile. Plaintiff has not yet had an opportunity to submit an amended complaint, and Plaintiff
now has the benefit of the Court's analysis to cure the deficiencies identified in this opinion.
*See Norman v. Experian Info. Sols., Inc.*, No. 1:23-CV-9245 (GHW), 2024 WL 1175201, at *3
(S.D.N.Y. Mar. 19, 2024) ("The pleading deficiencies identified in the R&R and this order may be
corrected, so amendment is not necessarily futile."). In particular, to successfully replead,
Plaintiff would need to:

(1) Identify which protected class or classes that she belongs to are relevant to this
litigation.

(2) As to the discrimination claim, allege that Coleman deprived Plaintiff of additional
work assignments *because of* Plaintiff's membership in a protected class or classes. This
discriminatory intent can be pleaded either by alleging facts directly supporting an inference
that Coleman felt animus toward Plaintiff because of her race/color, or her disability status, or
her national origin, or her age; or by alleging circumstantial evidence, such as allegations that
Plaintiff's favored coworkers were not members of Plaintiff's protected class or classes.

(3) As to the hostile work environment claim, allege sufficiently severe mistreatment –
facts that demonstrate a pattern of harassment and disparate treatment "pervasive enough
that reasonable people would consider their working conditions to be altered as a result."
Additionally, Plaintiff would need to allege that this severe mistreatment occurred *because of*

25

Plaintiff's membership in a protected class or classes, either by alleging direct or indirect evidence that animus due to protected class membership was the *cause* of her mistreatment.

(4) As to the retaliation claim: If Plaintiff seeks to allege additional adverse employment actions besides the reassignment of her work, she must identify non-conclusory facts about Coleman's exclusionary behavior towards her. Additionally, Plaintiff would need to allege that any adverse employment actions occurred in response to Plaintiff's filing of the EEOC complaint. This causation can be pleaded either by alleging direct or indirect evidence that the adverse employment actions were caused by her filing of the EEOC complaint.

## CONCLUSION

For the foregoing reasons, I grant the motion to dismiss without prejudice. Plaintiff may file any amended complaint by June 22, 2024. If Plaintiff has questions about this Order, filing papers in this judicial district, or any procedural matters, she should contact the Court's Pro Se Intake Unit at (212) 805-0175, or the independent NYLAG Legal Clinic for Pro Se Litigants in the SDNY at (212) 659-6190.

DATED:  April 25, 2024
        New York, New York

SO ORDERED.

**ROBYN F. TARNOFSKY**
United States Magistrate Judge