UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.


-against-

_____

_____

_____
Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

_____CV_____
(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes    ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

| **NOTICE** |
| --- |
| The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2. |

Rev. 3/24/17

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

First Name      Middle Initial   Last Name

Street Address

County, City        State      Zip Code

Telephone Number       Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

     Name

     Address where defendant may be served

     County, City     State    Zip Code

Defendant 2:

     Name

     Address where defendant may be served

     County, City     State    Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                    State                    Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

_____
Name

_____
Address

_____
County, City                    State                    Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐    **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐    race: _____

☐    color: _____

☐    religion: _____

☐    sex: _____

☐    national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐  did not hire me

☐  terminated my employment

☐  did not promote me

☐  did not accommodate my disability

☐  provided me with terms and conditions of employment different from those of similar employees

☐  retaliated against me

☐  harassed me or created a hostile work environment

☐  other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? _____

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☐   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice? _____

When did you receive the Notice? _____

☐   No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

☐   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____


_____
Name (Last, First, MI)

_____
Address            City            State            Zip Code

_____
Telephone Number            E-mail Address

_____
Date            Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

**AMENDMENT TO CASE 1:23-cv-10660-RFT Dinkins v. Mayorkas**

1. **Protected Class or Classes that Plaintiff belongs to that is relevant to this Litigation.**

I, Zaziiz S. L. Dinkins, do hereby testify that while I was a Program Analyst for the Federal Emergency Management Agency, located on the 52nd Floor of 1 World Trade Center, New York, New York 10007, and hired to build the Business Management Branch with my two Co-workers: Tiffany Lowe, and Maurice McRae, (both similarly situated as Program Analysts, but not of the same protected classes as specified herein), I was discriminated against, and made subjected to a hostile working environment, and retaliated against, between the period of April 4, 2018, and February 4, 2020, by Tasha Coleman, the Director of the Mission Support Division, Federal Emergency Management Agency, 52nd Floor, 1 World Trade Center, New York, New York, 10007, because of my race, which is Belizean Creole, and my national origin, which is Belize, Central America, and my disability, which is Bipolar, and my age, which was 60 years, violating federal laws under Title VII in the Civil Rights Act of 1964, and under Title 1 in the American with Disabilities Act of 1990, and under Section 504 in the Rehabilitation Act of 1973, as amended, and under the Age Discrimination in Employment Act of 1967.

2. **As to the Discrimination Claim.**
   a. **Federal laws violated.**
   b. As the Director of Mission Support of the Federal Emergency Management Agency, the following are laws I believe Tasha Coleman violated when she discriminated against me.
      i. Title VII in the Civil Rights Act of 1964 states that it "…prohibits employers from discriminating against employee because of their sex, color, race, national origin, and or religion."
      ii. Title 1 in the American with Disabilities Act states that "…it is unlawful for employers to discriminate on the basis of disability, including people living with disabilities…"
      iii. Section 504 of the Rehabilitation Act of 1973, as amended "prohibits employment discrimination on the basis of disability in any program or activity which receives Federal financial assistance."
      iv. The Age Discrimination in Employment Act of 1967 states that it "prohibits employment discrimination against persons 40 years of age or older." It also states that it "guides employers in ways to be inclusive of employees of all ages, while providing legal protection for older workers who may experience discrimination due to their age. It states that "This legislation makes it outright illegal for an employer to fire or refuse to hire someone on the basis of their age."
   c. **Adverse Employment Action**

i.  Regarding the element of the discrimination claim I do hereby testify that I had suffered adverse employment actions from Tasha Coleman because of my race which is Belizean Creole, and because of my national origin, which is Belize, Central America, and because of my disability which is Bipolar, and because of my age which was 60 years which combined caused a materially adverse change in the terms and conditions of my employment.  The change in the terms and working conditions that I had to endure wasn't a matter of the inconvenience of the change of job responsibilities, it was more disruptive than that. Examples of the events that constituted the adverse employment actions taken by Tasha Coleman are as follows:

1.  Tasha Coleman did not renew my work contract  because of my race, Belizean Creole which protected class my co-workers: Tiffany Lowe and Maurice McRae did not share, but who were similarly situated as Program Analysts, and also because they were not of my protected class of national origin as Belize, Central American, and because they were not of my class of being disabled with Bipolar, and because they were not of my protected class age 60 years old but were younger, under the age of 40, and so they were treated differently and more favorably.  Their contracts were extended and mine was not, even though my supervisor Marcia Edwards told us the Program Analysts that the minimal extension to our contracts would be a year. Yet, they were both absorbed within the organization in other capacities, and I was not. Additionally, I had a clean record of performance and never had any write-ups. In the process, because of my membership in the protected classes as specified, Tasha Coleman was occasionally motivated to treat me differently and make insulting comments to me whenever my supervisor was absent as when she told me "I don't understand why you are here, every time I turn around, I see you."

2.  Tasha Coleman significantly diminished my material responsibilities when she disbanded the Business Management Branch and neglected to replace the project with other projects and job responsibilities that were comparable. Tasha Coleman, having the knowledge that the very purpose that Marcia Edwards hired me was to help build the Business Management Branch, purposefully proceeded to discriminate against me because of my race, and my national origin, and my disability, and my age. Concurrently, my two co-workers that were similarly situated, that were also tasked to build the Business Management Branch,

that were not of my protected classes, were treated differently and shown favoritism and readily given opportunities to take on projects and comparable job responsibilities while I was not. Instead, I was told to find training on the computer to do or wait for Marcia Edwards to find something for me to do which at best consisted of filling out forms for the Contracting and IT Division which Marcia Edwards Supervised. Tasha Coleman discriminated against me even though I was more than qualified for the position and the task that I was hired to do.

3. By disbanding the Business Management Branch and neglecting to replace the project with comparable work, and by providing comparable projects and job responsibilities for my two co-workers that were similarly situated and not me because of my race which is Belizean Creole, and my national origin which is Belize, Central America, and my disability which is Bipolar, and my age which was 60 years, and by treating me differently and unfavorably, Tasha Coleman, left me in a position worst than when I was hired. I was worst off because Tasha Coleman's discrimination against me, and the disparate change in job responsibilities and the differential treatment and the favoritism shown to my two co-workers who were similarly situated, impacted my mental health, and left me devastated, crushed my morale, and significantly humiliated me in front of my co-workers. I struggled in silence and reluctantly in shame to make it through each day to complete endless training in front of a computer screen, when I was not filling out the forms Marcia had directed me to do for the Contracting and IT Division. Tasha Coleman denied me the same type of responsibilities and opportunities my two co-workers who were similarly situated were given.

4. Another event that contributed to the Adverse Employment Actions by Tasha Coleman because of my race and my national origin, and my disability, and my age, was when Tasha Coleman isolated me from my co-workers by neglecting to tell me that our group was moving to a different area of the office. It was around September 20, 2019, that the isolation started when Tasha Coleman directed all Mission Support employees, including all those employees that were under Marcia Edwards' supervision, except myself, to relocate to another area, and the isolation did not end until October 28, 2019. Marcia Edwards, my supervisor, was absent at different intervals of time and it was business as usual for everyone except me. The issue was not addressed a few

hours later, it was not addressed until October 28, 2019, after other co-workers were commenting and gossiping about the issue as to why I was sitting in a location all alone all that time. This happened because Tasha Coleman leaving me isolated was her way of deliberately being disruptive to my working conditions.

5. It was more than an inconvenience for me to be sitting in an abandoned area all alone for a long period of time and with no work to do. It was so embarrassing and so humiliating for me to come into work daily sitting all alone doing endless training on the computer as my co-workers and other employees went about their daily routine. It was not until about October 28, 2019, that Tasha Coleman informed me that she could not direct me to move but that I had to wait for my Supervisor, Marcia Edwards, even though she had informed my two co-workers and all the Contracting and IT personnel that were under Marcia Edwards' supervision to move to the new area of the office. While the isolation lasted for over a month, its impact on me was far reaching. Out of all the adverse actions that Tasha Coleman took, this was one of the most devastating because the way in which I was excluded and derided, it truly made me feel like I didn't belong, and it hurt me to the core of my being. This type of hostile treatment from Tasha Coleman because of my race, my nationality, my disability, and my age, was severe and pervasive. Any reasonable person in my position would have probably reacted differently.

6. The next Adverse Employment Action taken by Tasha Coleman because she discriminated against me because of my race, and my national origin, and my disability, and my age, was when she excluded me from meetings that were pertinent to the projects and area of job responsibilities that included my two co-workers who were similarly situated, and where she proceeded to include Tiffany Lowe in meetings giving her special projects and challenging assignments and responsibilities, and where she assigned Maurice McCray to Puerto Rico giving him the opportunity for special projects and more challenging assignments and responsibilities and where she communicated with them regularly, but not me. In these meetings where I was excluded, she would hold briefings on all the projects that were being conducted, those that were forthcoming, what the expectations were, and the problems she needed to address. The exclusion from these meetings did create a significant

disadvantage in terms of my work conditions as a Program Analyst, because now while my co-workers were well informed on other opportunities in the light of the operation of the organization, and given additional job responsibilities and exposed to available projects, and were both being prepared for such, there were no such opportunities created for me which significantly impacted my employment by FEMA and forced me to be left behind.

7. The previous Adverse Employment Action could be conjoined with the Adverse Employment Action by Tasha Coleman to send my two co-workers to Puerto Rico but not me because of my race, my national origin, my disability, and my age because it did reflect a change in the conditions and terms of my employment. This is so because while the trips were not a typical occurrence for me, the trips allowed my two co-workers to excel and progress and gave them exposure to the core of the mission and the very reason of why FEMA existed in first place. This adverse employment action gave my two co-workers opportunities and additional responsibilities that were not given to me, and educated them, and gave them an advantage over me employment wise that I could never have gotten at FEMA unless I too was given the opportunity to travel to the disaster site to perform comparable job tasks. Maurice McRae was sent first, and Tiffany Lowe was sent to assist him, and I was kept back in the office to complete endless training and to complete forms for the Contracting and IT Divisions.

8. In the interim, Tasha Coleman disguised the adverse employment action to send both Maurice McRae and Tiffany Lowe to Puerto Rico and not me, as though Tom Von Esson, the Regional Administrator of Region II, had requested both Program Analysts for the tasks in Puerto Rico even though Tom Von Esson denied doing so in his affidavit.  And while Tasha Coleman was able to discuss the situation that existed in Puerto Rico in meetings with my two co-workers that were similarly situated and that did not share in my protected classes, I was not privy to any of the conversations which blatantly showed differential treatment and favoritism for my two co-workers and nothing but contempt, disrespect, and blatant disregard for me, which did set me undoubtedly at a disadvantage. Tasha Coleman's handling of the Puerto Rico assignments was done in a "hush-hush" manner, and when I found out about the assignments, she made light of it and

did not even make an offer or any type of gesture about my concerns, but just treated me as if was not considered a part of the team.

9. I would be remiss, if I didn't point out that the very first Adverse Employment Action that Tasha Coleman took was on or about April 4, 2019, when Marcia Edwards assigned me responsibility for the Personnel Policies and Directives and where I was required to place them on the share point for employees to easily access. But Tasha Coleman, because she was so adamant about discriminating against me because of my race, and my national origin, and my disability, and my age, she single handedly refused to sign off on the assignment and blocked me from gaining access to the share point while my two co-workers who were similarly situated and who were not a member of my protected classes, and to whom she showed differential treatment and favoritism, had total access to carry out any task that was required of them to be placed on the share point to service the employees of the division.

10. And additionally, the next Adverse Employment Action that Tasha Coleman took when she diverted and reassigned my work to her secretary (who did not share in any of my protected classes) and did not provide me with any alternative work and left me with nothing to do when there was work available, which was very egregious. Again, she treated me differently, and did not treat any of my two co-workers like this, who were similarly situated as Program Analysts and who did not share in any of my protected classes. Tasha Coleman discriminated against me because of my race, Belizean Creole, and my national origin, Belize, Central America, and my disability, Bipolar, and my age, 60 years.

**d. Discriminatory Intent**

i. Tasha Coleman targeted and discriminated against me because of my race which is Belizean Creole, and my national origin which is Belize, Central America, and my disability which is Bipolar, and my age which was 60 years, when she deliberately ignored me, or made comments or asked questions to make me feel uncomfortable because of these characteristics that made me a member of these protected classes.

ii. Such examples include when she would ignore or be slow to signing my disability leave slip and I would have to remind her constantly, when she would deliberately misspell my name and projected it on screen in the group meetings I was once allowed to attend at the outset of my

employment and I would ask her to correct it and she would not, when she questioned me about my credentials and commented on my presence working for FEMA, and her occasional deliberately held conversations with other of her confidants such as Valerie Osgood, for my over hearing, and so I could be intimated by things she would say out loud in the absence of my supervisor, and by her contemptuous and cynical chuckling and laughter especially when she made comments like "I don't know why you're here, every time I turn around I see you" and questions and comments like "what type of degree you say you have?" "Good, I'll make sure you get what you deserve". This type of discriminatory conduct and behavior that Tasha Coleman demonstrated left me extremely humiliated, fearful, and devastatingly hurt. After isolating me for over a month, she directed my supervisor Marcia Edwards to seat me directly in front of one of her confidants, Valarie Osgood, just so she could have the opportunity to continuously harass and humiliate me in front of her friend whenever she so chose to do so, and, therefore, to protect myself from her abuse and harassment, I politely asked permission from my Supervisor to change my seating arrangement which she understood and readily approved.

    iii.   Tasha Coleman discriminatory intent was supported by the fact that my two co-workers who were similarly situated as Program Analysts and who were not a member of the protected classes to which I belong were not discriminated against like I was, instead, they were shown preferential treatment, favoritism and treated better than I was, as indicated in the Adverse Employment Actions indicated above.

**3. As to the Hostile Work Environment Claim.**
    **a. Federal law violated.**
    b. As the Director of Mission Support of the Federal Emergency Management Agency, I believe Tasha Coleman violated the following law when she subjected me to a hostile working environment.
        i.   Title VII in the Civil Rights Act of 1964 states that it "prohibits national origin harassment when it is so severe or pervasive that it creates a hostile work environment."
        ii.   Tasha Coleman created a hostile working environment that was so severe or pervasive that any reasonable person would find it hostile and abusive, and I perceived it as such, hostile and abusive, and that the hostile environment she created was because her hostility and ill feeling toward me were because of my protected classes, my race, and my nationality, and my disability, and my age and not for any other reason. My two co-workers who were similarly situated as Program

Analysts and who did not share in my protected classes, were not subjected to a hostile environment because they did not share membership of my protected classes.

iii.    Tasha Coleman created a hostile working environment because her discriminatory conduct and behavior were frequent, they were severe, they were threatening and humiliating that included offensive comments and they interfered with my work performance and morale and impacted my mental health.  Her discriminatory conduct and behavior were frequent because of her pattern of harassment which would occur whenever my supervisor, Marcia Edwards, was out of the office for extended periods of time. Whether Marcia Edwards was out for vacation, time off, or training, it was during these time frames that Tasha Coleman would choose to make offensive comments to me and display her discriminating behavior and conduct.

iv.    Tasha Coleman's discriminatory conduct and behavior were severe and threatening and humiliating because not only did she leave me isolated for over a month (not briefly or for a few hours) and with nothing to do, while she moved my co-workers and the entire group to a new area of the office, but it should be noted that Tasha Coleman also once followed me to the elevator, got on the elevator with me, while I was alone, and stared me down in an intimidating fashion, which made me feel very fearful and uncomfortable.  The hostile environment Tasha Coleman created significantly impacted my mental health, my morale, myself esteem and my work performance.

v.    Once the BMB was disbanded, I was excluded from all the meetings she had with my coworkers and her secretary. The one-on-one meetings she had for the entire group were a separate set of meetings. I was also excluded from those meetings, and the reason for my wanting to be included was because the meetings were set up for the entire group to make their individual contributions to help improve the Division and I simply wanted to make my contributions like everyone else. By excluding me from meetings pertaining to my job, she made it difficult for me to be effective in my job performance.

vi.    Tasha Coleman also once approached me with an assignment that was a part of her tasking to do from the front office, that she apparently wasn't sure how to do it, and again my supervisor was absent, and she asked me to do it and imposed a deadline that was impossible for me to meet. She approached me with the assignment at the close of business just when I was about to get off work and I had to plead with her if I could get it done the next day. Again, she took the opportunity to deride me with her offensive comments. I thought for the first time she

was going to embrace me as part of the team, but no not so. Tasha Coleman's response to me after assisting her with the assignment was so insensitive, belittling, and inconsiderate. I believe that these types of disparate treatment from Tasha Coleman was pervasive and severe enough that others would have considered their working conditions to be altered as a result.

4. **As to the Retaliation Claim.**

   a. **Federal law violated.**

   b. As the Mission Support Director of the Federal Emergency Management Agency, I believe Tash Coleman violated the following law when she retaliated against me for filing a discrimination case against her.

      i. Title VII in the Civil Rights Act of 1964 states that it "prohibits an employer from retaliating against employees or applicants when they assert their rights under the law, including when an employee files a Title VII discrimination charge, opposes an employer practice that violates Title VII, or testifies or participates in a Title VII investigation or proceeding."

   c. **Protected Activity**

      i. I, Zaziiz S. L. Dinkins, do hereby testify that as a member of the protected classes, of which my race is Belizean Creole, and my national origin is Belize, Central America, and my disability is Bipolar, and my age was 60 years, and my gender female, that I participated in an activity protected by anti-discrimination laws,  by filing an equal employment discrimination complaint against Tasha Coleman, that my employer knew of the participation, that the employer subjected me to a materially adverse employment action after the protected activity, and that there was a causal connection between the protected activity and the adverse employment action.

   d. **Adverse Employment Action**

      i. Specifically, because I filed an EEO discrimination complaint against Tasha Coleman, she retaliated against me by taking an adverse employment action to divert and reassign my work responsibilities to her secretary, providing me no alternatives. Tasha Coleman left me with nothing to do even though there was work available, just because I had opposed her practice of employment discrimination, and her creation of a hostile work environment, because of her hostility and ill feelings towards me, because of my protected classes which consists of my race, Belizean Creole, and my national origin Belize, Central America, and my disability is Bipolar, and my age which was 60 years, and my gender, female.

ii.   Before Tasha Coleman diverted and reassigned my work to her
      secretary, she found ways to exclude me by taking other adverse
      employment actions against me. For example, on October 28, 2019,
      after she had left me isolated from my co-workers for well over a
      month with no work to do and no alternatives, (where the Isolation
      period started September 20, 2019, and ended October 28, 2019, which
      was not according to the terms and conditions of my employment), she
      informed me on that same day, October 28, 2019, that she could not
      direct me to move to the new office area, even though she had told
      everyone else, (including those employees under my supervisor, Marcia
      Edward's supervision) but had my supervisor, Marcia Edwards move me
      to be seated in front of one of her confidants, Valarie Osgood, an area
      that made me very uncomfortable. Again, on or around November 4,
      2019, I discovered that I was not even acknowledged or considered as a
      competing candidate nor selected for an interview for a Program
      Services Manager Position Vacancy, FEMA-20-KN-32574-MP within the
      same Mission Support Division that she was the Director of, at FEMA,
      and that the HQ FEMA specifically referred me for as a highly qualified
      candidate, which would have been considered as a promotion for me.

e.  **Causation**

i.   The adverse work events were caused by the protected activity of my
     filing an EEO discrimination complaint against Tasha Coleman directly
     because of the evidence of the hostile retaliation Tasha Coleman
     directed against me. It was my filing of the EEO complaint that caused
     Tasha Coleman to take away my work and it was on December 16,
     2019, when Tasha Coleman instructed my supervisor, Marcia Edwards,
     to assign all my work to her secretary.

ii.  It must be noted here that on September 28, 2019, I reported to my
     supervisor, Marcia Edwards, that I was going to call FEMA HQ, Office of
     Equal Rights to report Tasha Coleman's unlawful practice of
     employment discrimination. I did not get the opportunity to speak to
     anyone in that office until October 1, 2019, when I spoke with Florence
     Nelson indicating to her that I wanted to discuss my concerns regarding
     filing an EEO complaint against Tasha Coleman. Florence Nelson then
     scheduled a discussion for Friday, October 4, 2019, and immediately
     sent me an email with a copy of FEMA's Office of Equal Rights (OER)
     flyer, explaining the timelines involved in filing a complaint. After
     printing the flyer, I proceeded to follow the instructions and I speedily
     sent my complaint package to HQ FEMA OER. However, HQ FEMA OER
     was very slow to process the paperwork and I surmised that maybe that
     was how their normal process worked.

iii.    Nonetheless, after several telephone calls, and position changes in the office of HQ FEMA OER, and lapse of time, (during which time I was still under the impression that my package was still being processed), that HQ FEMA OER eventually told me that they had lost my package that I had submitted and did not provide any explanation for the lost EEO Complaint package.

iv.    It was not until December 9th, 2019, after Arlene Ashton took over as EEO Counselor, and told me that I had to be interviewed all over again and that I had to resubmit my package. Arlene Ashton then came to FEMA where I was working around December 10, 2019, during lunch, and interviewed me a second time. This is why the second EEO Complaint package was not dated until January 21, 2019. It was through no fault of my own. It was FEMA's fault because they had lost my package which was on a timeline, and I had to continuously pursue them until HQ FEMA OER finally made me aware of the fact.

v.    In addition, around December 16, 2019, when Tasha Coleman took action to take away all my work and directed my supervisor to divert and assign all my work to her secretary leaving me with no alternatives, it was the same morning that my supervisor, Marcia Edwards, had called me in one of FEMA's offices to speak to me.  At that time, during our conversation, I updated Marcia Edwards as to what was happening with the filing of my EEO Complaint. I told her that even though I had informed her way back on September 28, 2019, that I was filing an EEO complaint against Tasha Coleman, that HQ FEMA OER had lost my EEO Complaint package and that I had to be interviewed by the new EEO Counselor, Arlene Ashton all over again.

vi.    During the conversation with Marcia Edwards, Tasha Coleman called the office for Marcia Edwards, and Marcia Edwards went into the office where Tasha Coleman was located, and she was there for quite some time while I had to wait for her to come back into the office where I was waiting. When Marcia Edwards came back into the office to continue the conversation with me, immediately she informed me that Tasha Coleman had just directed her to divert and reassign all my work to her secretary. After Marcia Edwards made that statement, she basically expressed to me her dismay and told me she didn't understand how Tasha Coleman could do such a thing. I then responded to Marcia Edwards by asking her if she had informed Tasha Coleman about my EEO complaint against her, and Marcia Edwards acknowledged that she did inform Tasha Coleman but she didn't say when. Marcia Edwards then reassured me not to worry about it because she will find work for me to do. This is why Tasha Coleman's

act of retaliation by the diversion and reassignment of my work appears to have happened before the filing of the EEO complaint, which was the second EEO Complaint, that was not completed until January 21, 2020.

vii.   The original EEO Complaint package was in the process from October 9, 2019, and so its completion should have taken place earlier and should have had an earlier completion date if FEMA OER did not lose my package and had to start the process all over again. Tasha Coleman's discriminatory conduct and behavior to retaliate against me by diverting and reassigning all my work to her secretary leaving me with no alternatives, happened because she had found out that I had filed an EEO Complaint, therefore, her retaliation was caused by my filing of the EEOC complaint, a protected activity.

**5.  Conclusion.**

In conclusion, Tasha Coleman discriminated against me for who I am and what I am perceived to be. Tasha Coleman treated me differently and discriminated against me because of her hostility and ill feelings towards me because of my protected classes, my race Belizean Creole, my national origin, Belize, Central America, my disability, Bipolar, and my age 60 years old, and my gender female, and subjected me to a hostile working environment and retaliated against me for  filing an EEO Complaint, a protected activity, due to her unlawful practice of employment discrimination. My two co-workers who were similarly situated and who did not share my protected classes were given preferential treatment, shown favoritism, and treated better than me.

*Zaziiz S. L. Dinkins*, 4/30/2024

Zaziiz S. L. Dinkins
410 Short Hills Drive
Mount Royal, NJ 08061
zaziizdinkins@yahoo.com
646-923-2694